GOBIERNO DE LA CAPITAL, demandante y apelado, *v.* CONSEJO EJECUTIVO DE PUERTO RICO, ETC., y LA AUTORIDAD DE FUENTES FLUVIALES DE PUERTO RICO, demandados y apelantes.

Núm. 8703.—*Sometido:* Julio 7, 1944. *Resuelto:* Julio 3, 1944.

*F. Fernández Cuyar, H. González Blanes* y *Cayetano Coll Cuchí,* abogados del Gobierno de la Capital, peticionario; *Hon. Procurador General Interino Jesús A. González, Fernando B. Fornaris, Procurador General Auxiliar* y *Luis Negrón Fernández,* abogados del Gobernador, el Consejo Ejecutivo y la Autoridad de Fuentes Fluviales de P. R.; *James E. Curry, José Vilá Ruiz* y *Antonio M. Bird, of counsel,* por la Autoridad de Fuentes Fluviales.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Todavía se encuentra ante nos este caso. El 20 de abril revocamos una sentencia declaratoria de la corte de distrito y dictamos una nueva sentencia declaratoria al efecto de que la Ley Núm. 39, Leyes de Puerto Rico, 1941, Sesión Extraordinaria (pág. 139), según fué enmendada por la Ley Núm. 29, Leyes de Puerto Rico, 1942 ((1) pág. 411), "no es nula por no disponer una justa compensación en el caso de que se traspase el acueducto del Gobierno de la Capital a la Autoridad de Fuentes Fluviales de Puerto Rico bajo los términos de dicha Ley."

El 28 de abril La Capital radicó un escrito de apelación para ante la Corte de Circuito de Apelaciones contra nuestra sentencia del 20 de abril. El 1 de junio, por los motivos con-

signados en nuestra opinión de igual fecha, declaramos sin lugar la moción de La Capital del 28 de abril solicitando de esta Corte "se sirva fijar la cuantía de la fianza que deba prestar, y expedir luego un auto de *supersedeas* . . .".

El 6 de junio La Capital radicó una petición alegando que el Consejo Ejecutivo había aprobado el 2 de junio una resolución al efecto de que el Comisionado de Sanidad había informado, de conformidad con la referida Ley Núm. 39, que "en su opinión los acueductos de los municipios de la Capital de Puerto Rico, Río Piedras, Guaynabo, Bayamón y Cataño no proveen a los habitantes de todos y cada uno de dichos municipios agua de calidad, cantidad y regularidad suficientes para afrontar las necesidades ordinarias de dichos habitantes, de conformidad con las normas fijadas por el Departamento del Tesoro de los Estados Unidos para agua potable y agua para usos culinarios a ser suministrada a los porteadores públicos en el comercio interestatal . . .". Asimismo alega la referida petición que en dicha resolución el Consejo Ejecutivo había designado un examinador para que celebrara una vista el 12 de junio "a la que podrán asistir dichos municipios y mostrar causa por qué no deberá aprobarse una resolución o resoluciones traspasando dichos acueductos a la Autoridad de las Fuentes Fluviales de Puerto Rico . . .".

La petición del 6 de junio de La Capital contiene entonces la siguiente alegación:

"5.—Que la iniciación de los procedimientos aludidos representa perjuicios y daños irreparables a la parte demandante, Gobierno de la Capital, y asimismo tienden a hacer inefectiva la jurisdicción en apelación de la Corte de Circuito de Boston, a la vez que exponen a la parte apelante a una multiplicidad de litigios innecesarios, caso de resolverse a su favor el recurso de apelación instado por ella."

Concluye la petición suplicando que dictemos una resolución en este procedimiento dirigida a los demandados-apelantes (apelados ante la Corte de Circuito de Apelaciones)[1]

---

[1] En este caso los miembros del Consejo Ejecutivo de Puerto Rico y la Autoridad de Fuentes Fluviales son los demandados-apelantes; en adelante se les llamará los demandados.

"paralizando los procedimientos iniciados por el Consejo Ejecutivo de Puerto Rico a los efectos de verificar el traspaso del Acueducto de San Juan a la Autoridad de Fuentes Fluviales de Puerto Rico, así como paralizando también cualquier acción que pudieran los demandados adoptar tendientes a verificar tal traspaso . . . hasta tanto se considere y resuelva el aludido recurso de apelación . . . ".

Señalamos para el 7 de junio la vista de esta petición, a la cual comparecieron los demandados y radicaron una oposición escrita a la misma. En dicho día el abogado de la Autoridad de Fuentes Fluviales expresó su creencia de que esta Corte no tenía jurisdicción para conceder la petición de La Capital del 6 de junio, y pidió permiso para radicar un alegato en apoyo de su contención. Declaró que necesitaba hasta el 12 de junio para radicar dicho alegato, y que creía razonable se le concediera a La Capital hasta el 17 de junio para replicar. En su consecuencia dictamos el 7 de junio una resolución concediendo esta súplica del abogado de la Autoridad de Fuentes Fluviales. En dicha resolución dijimos que "sería imposible que esta Corte pudiera resolver dichas cuestiones legales antes del día 12 de junio de 1944, fecha señalada para comenzar la vista pública ante el Consejo Ejecutivo"; y por tanto esta Corte ordenó al Consejo Ejecutivo que se abstuviera de iniciar o proseguir el procedimiento administrativo ya mencionado, "sin prejuzgar en modo alguno la cuestión levantada en cuanto a su falta de autoridad para expedir el auto de *injunction* solicitado, y con el solo propósito de proteger su jurisdicción para decidir las cuestiones que habrán de ser sometidas a su decisión dentro de este procedimiento . . . ".

Durante varios días con posterioridad al 7 de junio, se practicó prueba sobre los méritos de la petición de La Capital del 6 de junio, habiendo las partes radicado sendos alegatos.

■■ Al comenzar la consideración de esta petición, nos confrontamos con la contención de los demandados en cuanto

a la falta de jurisdicción de esta corte, en esta etapa del procedimiento, para prohibirle al Consejo Ejecutivo la celebración de la vista contemplada en su resolución del 2 de junio. Procederemos, por tanto, a resolver dicha cuestión.

Para poder contestar este punto, es necesario que determinemos: (1) la naturaleza del procedimiento que pende ahora ante nos; y (2) la fuente de nuestra alegada autoridad para intervenir en el mismo.

En nuestra opinión del 1 de junio declarando sin lugar la moción de La Capital para que se fijara una fianza de supersedeas, ya hemos contestado en parte la primera cuestión. En ella dijimos que el caso ante nuestra consideración envolvía una sentencia declaratoria, y nada más. Ante la corte de distrito nunca se solicitó expresamente un injunction permanente, bien en la demanda o en alguna alegación posterior. Aun cuando La Capital solicitó un injunction *pendente lite* por estipulación de las partes nunca se celebró la vista sobre el mismo; nunca se renovó tal solicitud; y nunca se expidió el injunction. Tampoco La Capital, una vez la corte de distrito dictó la sentencia declaratoria al efecto de que la Ley Núm. 39 era inconstitucional, solicitó el injunction, a pesar de tener derecho a solicitarlo de conformidad con la sección 8 de la Ley Uniforme de Sentencias Declaratorias, Ley Núm. 47, Leyes de Puerto Rico, 1931 (pág. 379). De haberse solicitado tal injunction, al resolverse la apelación interpuesta, hubiéramos estado en condiciones de considerar la resolución de la corte de distrito, concediendo o negando la moción de injunction, y nuestro fallo sobre la cuestión estaría ahora ante la Corte de Circuito de Apelaciones. Pero La Capital optó por no solicitar el injunction en la corte inferior. Y en su consecuencia nunca hemos tenido ante nuestra consideración en apelación actuación alguna de la corte de distrito en cuanto a una solicitud de remedio de injunction. Vamos más lejos y asumimos, sin resolverlo, que a pesar de que La Capital no insistió en tal remedio coercitivo ante la corte de dis-

trito, de haber esta corte confirmado la sentencia de la corte inferior, hubiéramos podido luego considerar y conceder tal petición de injunction de La Capital. Si bien este último punto es, desde luego, académico, toda vez que revocamos la sentencia declaratoria de la corte de distrito y declaramos que la Ley Núm. 39 es constitucional, lo incluímos en esta discusión para recalcar el hecho de que no procede aquí la contención de que estuvo alguna vez esta corte o estará ante la Corte de Circuito de Apelaciones en sus méritos, algo que no sea una mera sentencia declaratoria. En resumen, la apelación en este caso fué contra una sentencia declaratoria, y no contra una sentencia declaratoria junto a una resolución concediendo o negando un injunction. Y la misma situación existe ahora ante la Corte de Circuito de Apelaciones.

Sin embargo, La Capital insiste en que tenemos el ''poder inherente'' para conceder su petición de injunction para impedirle al Consejo Ejecutivo la celebración de los procedimientos administrativos provistos en su resolución del 2 de junio—una solicitud de injunction, repetimos, que nunca estuvo ante la consideración de la corte de distrito. Por tanto, examinaremos la segunda cuestión—la fuente de nuestra alegada autoridad para tomar tal acción bajo estas circunstancias.

El alegato de La Capital afirma que ''El injunction en el caso presente se solicita en auxilio de la apelación, tal y como se pidió en el caso de Cumberland, supra . . . ''. Pero la primera oración de su alegato reconoce la diferencia entre el presente caso y el de Cumberland. Este alegato comienza por decir que ''En el caso de Cumberland Telephone & Telegraph Co. v. Louisiana Public Service Commission (260 U.S. 212), se sostuvo que si bien la Corte Suprema tiene indudablemente poder para conceder una solicitud interesando una orden de entredicho provisional para proteger la apelación de una sentencia que deniega un injunction, generalmente, tal solicitud, debe ser presentada a los jueces que consideraron el caso en sus méritos y que pueden más adecuadamente ejercer su sana

discreción para determinar el balance de conveniencia que decida si debe o no expedirse la orden." (Bastardillas nuestras).

El caso de *Cumberland* cita el de *Hovey* v. *McDonald*, 109 U.S. 150, 161, en el que también descansa La Capital. En su alegato La Capital cita sólo dos casos más—*Doughty* v. *Somerville & Easton R. R. Co.*, 51 Am. Dec. 267 (N. J., 1848) y *Norris* v. *Tripp*, 82 N.W. 610 (Iowa, 1900)—en apoyo de su proposición de que tenemos el "poder inherente" para tomar la acción que ella nos pide. Pero de un examen de todos los casos citados por La Capital se desprende que, en todos ellos, con la posible excepción del caso de *Norris*,(²) tal y como la propia Capital dice al citar el caso de *Cumberland,* se le pidió a la corte que restaurara o concediera un injunction en lo que se decidía la apelación interpuesta contra una sentencia concediendo o negando un injunction. No se nos ha citado caso alguno, y ninguno hemos encontrado, en el que una corte intermedia de apelaciones, como es ésta, haya alguna vez concedido un injunction en lo que se resolvía la apelación a una corte superior contra una sentencia declaratoria que consiste únicamente de una declaración de constitucionalidad. Pronto será evidente que ésta es una diferencia importante.

La Capital claramente tiene razón al afirmar que cualquier injunction concedido por nosotros en este estado del caso sería sólo con el fin de proteger la jurisdicción apelativa de la Corte de Circuito de Apelaciones. Nuestra función al resolver los méritos del caso está terminada. Del mismo modo, toda vez que nada nos queda por hacer en nuestro carácter de tribunal de última instancia en el sistema de cortes insulares, cual-

---

(²)Es difícil determinar bajo qué teoría actuó la corte en el caso de *Norris*. Puede ser que éste sea un caso exactamente igual a los otros citados por La Capital. Pero aun asumiendo que no lo sea, a lo sumo allí la corte estaba ejercitando "el poder de suspender *(stay)*—poder que es tan antiguo como el propio sistema judicial de la nación". (*Scripps-Howard Radio* v. *Comm'n,* 316 U. S. 4, 17). Pero ya hemos resuelto, por los motivos consignados es nuestra opinión del 1 de junio, que en el presente caso no procede una suspensión *(stay)*.

quier cosa que hagamos con el fin de proteger la jurisdicción de la Corte de. Circuito de Apelaciones tiene necesariamente que hacerse dentro del papel que desempeñamos como corte inferior en la jerarquía de las cortes Federales. Por tanto, parece obvio que nuestro poder para actuar aquí, si existe, debe emanar de estatutos, reglas y casos Federales.

Al iniciar el examen de la ley Federal, nos confrontamos en seguida con el problema de si las Reglas Federales de Procedimiento Civil son aplicables a las apelaciones de esta Corte a la Corte de Circuito de Apelaciones. En el Escolio 2 a la Regla 1 el Comité Consultivo sobre las Reglas Federales dice lo siguiente: "La frase 'cortes de distrito de los Estados Unidos' que aparece en la ley que autoriza a la Corte Suprema de los Estados Unidos a promulgar reglas de procedimiento civil no incluye las cortes de distrito radicadas en los territorios y posesiones insulares. Véase *Mookini et al.* v. *United States,* 303 U.S. 201, 58 S. Ct. 543, 82 L. Ed. 748 (1938)." (Título 28 U.S.C.A. foll. §723 c, Regla 1).

El Congreso se percató de esta situación y aprobó una ley especial haciendo las Reglas Federales aplicables "a la Corte de Distrito de los Estados Unidos para Puerto Rico y a las apelaciones de la misma". (Título 48 U.S.C.A. §873*a*). Pero no se pasó ley especial alguna disponiendo que las Reglas Federales expresamente serían aplicables a las apelaciones procedentes de esta corte para ante la Corte de Circuito. Moore comenta la situación como sigue:

"Las apelaciones del Tribunal Supremo de Puerto Rico se llevarán ante la Corte de Circuito de Apelaciones para el Primer Circuito, y las del Tribunal Supremo de Hawaii ante la Corte de Circuito de Apelaciones para el Noveno Circuito, a no ser que se provea por ley una apelación directa para ante la Corte Suprema de los Estados Unidos. Parece que no hay nada en las leyes de los Estados Unidos o en las cartas orgánicas de los territorios que indique claramente que el método de llevar y perfeccionar una apelación de las Cortes Supremas de dichos territorios se ajustará al método de llevar y perfeccionar una apelación de una corte de distrito a una corte de circuito de apelación o a la Corte Suprema de los Estados Unidos.

según fuere el caso. Sin embargo, sería conveniente que hubiera concordancia entre tales apelaciones y las apelaciones procedentes de las cortes de distrito de los Estados Unidos para dichos territorios; y, en su consecuencia, que las Reglas Federales deberán aplicarse a las apelaciones de las Cortes Supremas de dichos territorios, si las Reglas Federales son aplicables a las cortes de distrito de los Estados Unidos para dichos territorios.'' (1 Moore's Federal Practice, §1.09, págs. 61-2).

Nuestra Corte de Circuito de Apelaciones en su Reglamento Revisado efectivo el 20 de septiembre de 1940, quizá descansando en el Título 48 U.S.C.A. §865,([3]) expresamente provee en el inciso 6 de la Regla 10 que dicha Regla 10— que sustancialmente reexpone la Regla 73 de las Reglas Federales de Procedimiento Civil disponiendo la manera de perfeccionar las apelaciones de las cortes de distrito para ante las Cortes de Circuito—será aplicable a las apelaciones procedentes de esta Corte Suprema para ante la Corte de Circuito. En todas las apelaciones de esta corte a la Corte de Circuito de Apelaciones desde que el Reglamento Revisado de la Corte de Circuito entró en vigor, esta corte y las partes han asumido que las disposiciones apelativas de las Reglas Federales son de aplicación y han actuado de conformidad con ellas. Aparentemente nadie ha cuestionado esta práctica ante esta corte o ante la de Circuito. Por tanto, asumiremos, sin decidirlo, que las Reglas Federales son aplicables a esta apelación.([4])

---

([3])La Sección 865 dice como sigue:

''Recursos por causa de error y apelaciones. Los recursos por causa de error y las apelaciones contra las sentencias y decretos definitivos del Tribunal Supremo de Puerto Rico, podrán ser interpuestos y seguidos ante la Corte de Circuito de Apelación para el primer circuito y ante la Corte Suprema de los Estados Unidos, de la manera como ahora está dispuesto por ley.''

([4])Si las Reglas Federales no se aplican a esta apelación, presumiblemente la vieja práctica continúa en vigor. Bajo la antigua práctica era necesario una orden admitiendo la apelación, y ''era la admisión de la apelación . . . lo que impide que el término para apelar siga corriendo.'' (3 Moore's Federal Practice, §73.01, pág. 3390). Aquí no se ha dictado orden alguna admitiendo la apelación—La Capital sencillamente radicó un escrito de apelación, presumiblemente de conformidad con la Regla 73(a) de las Reglas Federales y la Regla 10 de la Corte de Circuito de Apelaciones.

Pero de aplicarse a la presente apelación las Reglas Federales, no sólo son aplicables a los diversos pasos que deben darse para perfeccionar una apelación ante la Corte de Circuito de Apelaciones, si que también al remedio que esta corte está autorizada a conceder para proteger la jurisdicción de la Corte de Circuito en relación con la apelación que pende ante dicha corte. Examinando la petición de injunction en este caso frente a las referidas disposiciones apelativas de las Reglas Federales, encontramos que la Regla 62(c) es la única Regla que posiblemente podría aplicarse aquí. Dicha Regla dice en parte como sigue:

"Injunction en lo que se Resuelve la Apelación. Cuando se apela de una sentencia interlocutoria o final, concediendo, disolviendo, o negando un injunction, la corte a discreción puede suspender, modificar, restaurar, o conceder un injunction mientras la apelación se resuelve, bajo términos de fianza o de cualquiera otra índole según crea conveniente para la seguridad de los derechos de la parte contraria."

Dicha Regla no es nueva en la práctica apelativa Federal. Está modelada en la Regla 74 de Equidad, y es sustancialmente idéntica a dicha Regla, excepto que amplía un poco la vieja Regla de Equidad (⁵) En el caso de *Cumberland* la Corte Suprema de los Estados Unidos cita la Regla 74 de Equidad para justificar la concesión de un injunction en lo que se resolvía una apelación contra sentencia denegando un injunction. En su consecuencia, es inmaterial el que descansemos aquí en la jurisprudencia, representada por el caso de *Cumberland,* o en la antigua práctica comprendida en la Regla 74 de Equidad, o en la Regla 62(c) de las Reglas Federales de Procedimiento Civil—cada una, a nuestros fines, es una reexposición de la regla existente anteriormente.

Pero el defecto fatal en el caso de La Capital es que el remedio autorizado por la Regla 62(c) y sus predecesoras

(⁵) Federal Rules of Civil Procedure and Proceedings of the American Bar Institute, Cleveland, 1938, pág. 326; 3 Moore's Federal Practice, §62.03, págs. 3296-8.

se basa en la premisa de que "se apela de una sentencia . . . concediendo, disolviendo, o negando un injunction . . .". Bajo tales circunstancias "la corte a discreción puede suspender, modificar, restaurar, o conceder un injunction mientras la apelación se resuelve . . .". Y aquí, como hemos visto, no existe apelación contra sentencia concediendo o negando un injunction. La corte de distrito dictó solamente una sentencia declaratoria. La apelación contra la misma para ante esta corte no incluía apelación contra sentencia concediendo o negando un injunction. Nuestra sentencia, que se ha apelado para ante la Corte de Circuito, es al mismo efecto. La Regla 62(c), y la jurisprudencia y Regla de Equidad anterior que la misma codificó, no puede por tanto tener posible aplicación a la sentencia que ahora se apela para ante la Corte de Circuito de Apelaciones. Lo que La Capital en efecto nos pide es que consideremos, ante esta corte y dentro de este procedimiento, un recurso original de injunction, colateral al presente recurso de sentencia declaratoria. Pero al dictar nuestra sentencia final sobre los méritos, agotamos toda la jurisdicción que tenemos en este procedimiento específico de sentencia declaratoria bajo las leyes insulares en nuestro carácter de corte insular de última instancia. Una vez se apela para ante la Corte de Circuito de Apelaciones, no nos queda ningún otro papel que desempeñar como corte apelativa insular. Después de la apelación, sólo podemos actuar en ayuda de dicha apelación. Y al así actuar, funcionamos como una corte Federal inferior dentro del sistema judicial Federal a tenor con la ley Federal. De un examen de tal ley Federal no surge base alguna sobre la cual, en ayuda de una apelación contra sentencia declaratoria, estemos autorizados a considerar una solicitud de injunction que no estuvo ante nos cuando dictamos la sentencia que ahora se apela para ante la Corte de Circuito de Apelaciones. En síntesis, no hay injunction en el caso que se pueda "suspender, modificar [o] restaurar . . ." en lo que se resuelve la apelación; y no ha habido una sentencia "negando" un in-

junction: el que podamos "conceder" en lo que se resuelve la apelación. Lo único que está ante la Corte de Circuito de Apelaciones es una declaración de constitucionalidad; ninguna acción puede tomarse por esta Corte—o en verdad es necesaria—para proteger la jurisdicción de la Corte de Circuito de Apelaciones en la apelación contra nuestra sentencia conteniendo tal declaración.

Cualquier argumento de que nuestra decisión se basa en una diferencia de forma y no de sustancia no resistiría mucho análisis. La Capital eligió su camino. Si hubieran insistido en un remedio de injunction, la corte de distrito, aun cuando resolvió el caso a su favor en el aspecto declaratorio de su sentencia, concebiblemente no hubiera hallado daño irreparable que justificara el remedio de injunction, particularmente en vista de la disposición de la sección 5 de la Ley de Acueducto al efecto de que una solicitud de revisión por esta Corte de una resolución del Consejo Ejecutivo traspasando un acueducto de un municipio a la Autoridad de Fuentes Fluviales opera como una suspensión de tal resolución. Si la corte de distrito hubiera resuelto así, quizá hubiéramos llegado a la conclusión que la corte de distrito no abusó de su discreción, y hubiéramos confirmado. La Capital ahora nos pide, alegando ser un recurso para proteger la jurisdicción de la Corte de Circuito de Apelaciones en un procedimiento de sentencia declaratoria, que le concedamos un injunction sobre el cual nunca optó por insistir dentro de dicho procedimiento de sentencia declaratoria. Si han de "restaurarse" o "concederse" peticiones de injunction en lo que se resuelven las apelaciones, tales peticiones deben correr el escalafón de las cortes mientras está el caso ante ellas en sus méritos, y no deben sacarse de algún bolsillo mágico de "poder inherente" en un procedimiento colateral(⁶) instado para proteger

---

(⁶)Los abogados de La Capital aparentemente entienden que su presente solicitud es en efecto un procedimiento colateral, en vista de su cita, en apoyo de su posición, de la Anotación en 77 A.L.R. 717, que trata de remedio *auxiliar* *(ancillary)* de injunction. Pero tal procedimiento auxiliar (ancillary) es, desde luego, de ordinario un caso independiente en los méritos que descansa

la jurisdicción de una corte apelativa que no tiene ante sí una apelación contra sentencia concediendo o negando un injunction. Este caso, en vista de su historia, sencillamente no es un procedimiento de injunction y carecemos de facultad en momento tan tardío para convertirlo en tal procedimiento.

Esta opinión podría muy bien terminar aquí. Pero en vista del gran alcance de los argumentos y de la prueba aducida durante la vista en los méritos de esta petición de injunction, no creemos que sea impropio. indicar que en manera alguna hemos resuelto que el balance de conveniencias se inclina a favor de la negativa de la petición de injunction aquí radicada. Por el contrario, aunque repetidamente se les invitó por la corte a hacerlo, los demandados no presentaron el más leve indicio de prueba competente tendiente a establecer el hecho de que el agua suministrada por el acueducto de La Capital esté contaminada. Realizaron un intento de probar esto, pero lo abandonaron durante el curso de la vista. Han prevalecido aquí, no porque hayamos resuelto el balance de conveniencias a su favor en los méritos, si no porque no tenemos jurisdicción para conceder la petición de La Capital para que se decrete un injunction en esta etapa de este procedimiento.

De igual modo citamos con aprobación la siguiente manifestación del alegato de los demandados: "No puede posiblemente llevarse a efecto traspaso alguno del Acueducto hasta que esta corte haya tenido otra oportunidad de considerar los méritos de la decisión. La Ley de Acueductos dispone que cualquier municipio *afectado* por tal resolución puede obtener una revisión de esta corte; no hay limitación alguna en este privilegio. Y al radicarse la petición de. revisión, la resolución disponiendo el traspaso del Acueducto quedará automáticamente en suspenso."

---

sobre su propia base ante una corte de jurisdicción competente, y no una moción dentro de un pleito, que se alega está dirigida a proteger la jurisdicción de una corte superior sobre una sentencia en apelación que no contiene un fallo afirmativo o negativo en relación con el remedio de injunction. Conceder esta última moción equivaldría a conferir remedio directo, y no auxiliar (ancillary).

Si surge el caso de que esta corte llegase a resolver en contra de un municipio una petición de revisión contra una resolución en tal procedimiento administrativo antes de la determinación final por las cortes superiores en cuanto a la constitucionalidad de la Ley Núm. 39, quedarían por considerarse los problemas de (1) retención de nuestro mandato en el procedimiento administrativo hasta dicha determinación final en el procedimiento constitucional, y (2) la jurisdicción de la Corte de Circuito de Apelaciones para considerar una apelación contra nuestra decisión en el procedimiento administrativo,([7]) a pesar de la disposición de la Sección 5 de la Ley de Acueducto de que el "decreto" de esta Corte "será final, irrevisable e inapelable". *Cf. Paul Smith Const. Co. v. Buscaglia,* 140 F.(2d) 900 (C.C.A. 1, 1944), escolio 1.

*En virtud de nuestra falta de jurisdicción, la petición de La Capital del 6 de junio solicitando un injunction será denegada.*

—————

([7])La decisión definitiva de dicha cuestión, desde luego, tendría que emitirse por la Corte de Circuito de Apelaciones y no por nosotros.